# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| **ROBINSON STEEL CO., INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 2:10 CV 438** |
| | ) | |
| **CATERPILLAR INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION and ORDER</u>

On November 4, 2010, plaintiff Robinson Steel Co., Inc. ("Robinson") filed a

complaint in this court against defendant Caterpillar Inc. ("Caterpillar") stating claims

of breach of contract, promissory estoppel, fraudulent misrepresentation, constructive

fraud, unjust enrichment, and violations of Indiana's Deception and Criminal Mischief

Statutes. (Pl.'s Verified Compl., DE # 1.) These claims arise out of a dispute the parties

have about an agreement between them for the purchase of steel in 2008. This matter is

now before the court on Caterpillar's motion to dismiss this case for improper venue

pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3) and 28 U.S.C. § 1406(a), or

alternatively, to transfer jurisdiction to the United States District Court for the Central

District of Illinois pursuant to 28 U.S.C. § 1404(a). (DE # 10.)

## I.    BACKGROUND

### A.    *Factual background*

The following is a brief summary of the facts alleged in the verified complaint.

Robinson is an Indiana corporation that sells steel to manufacturers, and its principal

place of business in East Chicago, Indiana. (Pl.'s Compl. ¶ 7.) Caterpillar is a Delaware corporation that manufacturers construction equipment, and its principal place of business is in Peoria, Illinois. (*Id.* ¶ 8.) Robinson supplied steel to Caterpillar for nearly twenty years. (*Id.* ¶ 2.) During the course of this relationship, the parties typically entered into a yearly supply allotment agreement at a set contract price. (*Id.* ¶ 9.) Robinson alleges that pursuant to these agreements, it was obligated to provide steel to Caterpillar up to the total allotment amount for the year, but it was not obligated to supply steel in excess of that amount. (*Id.*)

According to Robinson, in 2008, Caterpillar ordered at least 1,575 tons of steel beyond its yearly allotment amount as set out in the parties' supply agreements. (*Id.* ¶ 10.) Robinson alleges that while it had no obligation to supply the excess steel, it did so because of the long relationship it had with Caterpillar and because of representations and agreements made by Caterpillar in written and oral communications in 2008. (*Id.*) Robinson alleges that Caterpillar ordered "significantly more excess steel during the peak months in the marketplace during 2008." (*Id.*) It states that many factors combined to cause the price of steel to double in 2008. (*Id.* ¶ 11.)

Robinson states that during the time of the price increases in 2008, Caterpillar asked Robinson if it could provide steel beyond the allotment amount. (*Id.* ¶ 12.) It states that extensive written and oral negotiations for this excess amount took place among Dennis Kunka ("Kunka"), Caterpillar's North American Category Manager for Unformed Steel; Neil Kisby ("Kisby"), one of Caterpillar's Steel Buyers for its Global

Purchasing Division; Henry Goff ("Goff"), Robinson's Vice President of Sales; and Trevor Gonterman ("Gonterman"), a Product Specialist for Robinson. (*Id.* ¶¶ 12-13.) Robinson claims that both parties recognized that the "spot pricing" for the excess amount would need to reflect the extreme pricing increases in the steel market. (*Id.* ¶ 13.) Robinson alleges that Kunka and Kisby agreed to pay for the excess steel at the price set by the CRU index. (*Id.* ¶ 14.)

Robinson claims that, in reliance upon the alleged agreement with Caterpillar to pay for the excess steel at CRU index pricing, it procured at least 1,575 tons of excess steel for Caterpillar. (*Id.*) It claims that despite their agreement, Caterpillar refused to pay Robinson the difference between the contractual allotment pricing and the CRU pricing for the 1,575 tons of excess steel. (*Id.* ¶ 15.) Robinson alleges that Caterpillar acknowledged that it owes additional amounts for the excess steel. (*Id.* ¶ 16.) But Robinson claims that instead of paying this amount, Caterpillar offered potential future business to Robinson and requested that Robinson account for the additional amount within the 2009 pricing for steel supplied to Caterpillar. (*Id.*)

B.    *Procedural background*

At the end of 2008, Robinson sent Caterpillar a debit memorandum asking that it pay $878,161.13 for steel shipped to it in 2008. (Kunka First Aff. ¶ 5, Def.'s Exh. 1 to Def.'s Mem. in Supp. of Mot. to Dismiss, DE # 11-1.) When Caterpillar did not send the additional payment, the parties attempted negotiations to resolve their dispute. (Order

of United States District Court for the Central District of Illinois 4,[1] Pl.'s Exh. A to Pl.'s Notice of Additional Authority, DE # 23-1.) When the negotiations failed, Robinson indicated that it planned to file suit against Caterpillar on September 1, 2010, in the United States District Court for the Northern District of Indiana. (*Id.*) On August 31, 2010, Caterpillar filed a suit for declaratory judgment against Robinson in the United States District Court for the Central District of Illinois. (*Id.*) The parties again attempted to settle, and when these efforts failed, Caterpillar served Robinson with its complaint on November 1, 2010. (*Id.*) Robinson filed its complaint in this court the next day. Robinson also moved to have the United States District Court for the Central District of Illinois dismiss Caterpillar's motion for declaratory judgment. That motion was granted on February 16, 2011. (*Id.* at 8.) The United States District Court for the Central District of Illinois determined that Caterpillar's action for declaratory judgment should be dismissed in favor of the substantive action (also called the "coercive action") before this court. (*Id.* at 7.)

     *C.*     *The parties' arguments*

     On November 24, 2010, Caterpillar moved to dismiss this cause of action for improper venue or, alternatively, to transfer venue to the United States District Court for the Central District of Illinois. (Def.'s Mot. to Dismiss, DE # 10; Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss, DE # 11.) Caterpillar argues that venue in the Northern

---

[1] Page number citations are to the numbers assigned to the documents by this court's cm/ecf system.

District of Indiana is not supported by 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims did not occur within the district. (Def.'s Mem. 6.) In response, Robinson argues that venue is proper in the Northern District of Indiana because pursuant to 28 U.S.C. § 1391(a)(1) an action may be brought in any district in which a defendant resides, and a defendant resides in any district in which it is subject to personal jurisdiction. (Pl.'s Resp. in Opp'n. to Mot. to Dismiss 4, DE # 21.) In reply, Caterpillar argues that Robinson waived basing venue on U.S.C. § 1391(a)(1) because in its complaint, Robinson plead that venue was proper under U.S.C. § 1391(a)(2). (Def.'s Reply. 4, DE # 22.) However, Caterpillar argues that the more appropriate remedy for "Robinson's improper filing of an Illinois-based dispute" in this court is to transfer the case to the Central District of Illinois. (*Id.* at 5.)

Caterpillar argues that an analysis of the relevant private and public interests show that this case should be transferred to the United States District Court for the Central District of Illinois. (Def.'s Mem. 7.) It argues that the personal interests weighing towards venue in Illinois are that Illinois is more convenient for Caterpillar and the key party witnesses (*id.* at 8, 10); all material events took place in Illinois (*id.* at 9); and the sources of evidence for the dispute are in Illinois (*id.* at 10). Caterpillar also argues that the plaintiff's choice of forum does not militate towards venue here. (*Id.* at 11.) This is because it argues that it is also a plaintiff in this litigation because of its declaratory judgment action in the United States District Court for the Central District of Illinois, so one of the two plaintiffs will not be able to litigate in its selected forum. (*Id.*)

Caterpillar argues that the public interest factors also weigh towards venue in Illinois. (*Id.* at 12.) First, it argues that Illinois has a greater interest in the litigation than Indiana because the events at issue occurred there. (*Id.* at 12.) Second, it argues that in diversity cases like the one at hand, it is preferable for the case to be heard by the judge most familiar with the relevant applicable law. (*Id.* at 13.) Since it argues that Illinois law should apply to this case, it argues that this factor weighs toward venue in Illinois. (*Id.*) Third, it argues that the congestion in the two court systems is about the same but that the time to litigate from filing to disposition is slightly shorter in Illinois. (*Id.* at 13-14.) Thus it concludes that all public interest factors point towards venue in Illinois.

In response, Robinson argues that Caterpillar has not shown that a transfer of venue is proper based upon the convenience of the parties and witnesses or the interests of justice. (Pl.'s Resp. 5.) Robinson contends that in the United States Court of Appeals for the Seventh Circuit, declaratory judgment actions that seek to wrest choice of venue from the plaintiff in a coercive action are presumptively improper. (*Id.* at 7.) Thus it argues that it is the relevant plaintiff in this action and its choice of forum in Indiana should be given considerable weight. (*Id.*)

Robinson argues that to succeed on its motion Caterpillar must point to facts supporting its claim of inconvenience, and it has failed to do so. (*Id.* at 5-6.) It argues that Caterpillar regularly litigates in the Northern District of Indiana and that the court systems are located so close to one another that the relative convenience of one court house cannot provide a basis for changing venue. (*Id.* at 6, 10.) Robinson further argues

that witness convenience weighs against a transfer of venue to the Central District of Illinois. (*Id.* at 9.) Robinson argues that Caterpillar has failed to show that the factors of situs of material events and relative ease and access to sources of proof favor transfer. (*Id.* at 11.)

Robinson argues that the public interest factors weigh against transfer. First, Robinson argues that Indiana has a greater interest in the litigation because Robinson is an Indiana corporation and it is seeking to vindicate its rights. (*Id.* at 13.) Second, it argues that the applicable law factor does not weigh towards venue in Illinois because the common law issues involved in this case are uncomplicated. (*Id.*) It also argues that it has pleaded non-contract-based claims under Indiana statutes. (*Id.* at 13-14.) Thus it argues that the applicable law factor favors venue in Indiana. (*Id.*) Finally it argues that Caterpillar has conceded that the time to trial is about the same in both districts, so this factor does not weigh towards transfer. (*Id.* at 14.)

In reply, Caterpillar reiterates that the key party witnesses reside in Illinois. (Def.'s Reply 5.) It argues that if any of these witnesses left their current employment, neither party could compel their appearance in this court since they live outside of this court's subpoena power reach. (*Id.* at 7.) Caterpillar argues that the testimony of the non-party steel manufacturer witnesses that Robinson identifies may not be relevant. (*Id.* at 8.) However, it argues that even if it is relevant, the discussions between Caterpillar and these manufacturers all took place in Illinois. (*Id.* at 8-9.) It again argues that the totality of the documentary evidence relevant in this case is primarily located in

Illinois. (*Id.* at 9.) It also argues that the steel at issue in this case was located in Illinois. (*Id.* at 10-11.)

## II.    ANALYSIS

### A.    *Motion to dismiss*

The Northern District of Indiana is an appropriate venue for this case, so the court will not dismiss this case for improper venue pursuant to RULE 12(b)(3) or 28 U.S.C. § 1406(a). As Robinson points out, 28 U.S.C. § 1391(a)(1) provides that an action may be brought in "any judicial district where any defendant resides, if all defendants reside in the same State." For the purposes of venue in a case based on diversity jurisdiction, a defendant resides in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

In its verified complaint, Robinson pleaded that the court has personal jurisdiction over Caterpiller:

> because Caterpillar purposely availed itself of the Indiana forum in entering into agreements and contracts for the purchase of steel with Robinson, an Indiana-based steel distributor, and Caterpillar engaged in intentional tortious acts in Indiana. Furthermore, Caterpillar has registered as a foreign corporation with the Indiana Secretary of State and maintains offices in the state of Indiana.

(Pl.'s Compl. ¶ 5.) Although Robinson's complaint does not specifically state that jurisdiction is proper under section 1391(a)(1), it still sets forth allegations that show that jurisdiction is proper under that provision. As Robinson has pointed out, Caterpillar does not contest that this court has personal jurisdiction over it and it has

not contested the personal jurisdiction facts as pleaded in the complaint.

In the Seventh Circuit, it is not clear which party bears the burden of proof for venue. *See Stickland v. Trion Group, Inc.*, 463 F. Supp. 2d 921, 924-25 (E.D. Wis. 2006); *MB Fin. Bank, N.A. v. Walker*, No. 09 C 7380, 2010 U.S. Dist. LEXIS 99625, at*9-11 (N.D. Ill. Sept. 23, 2010) (unpublished). *Compare Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182 (7th Cir. 1969) *with In re Peachtree Lane Assocs.*, 150 F.3d 788, 792 (7th Cir. 1998). However, what is clear is that burden only arises once venue has been challenged. *Stickland,* 463 F. Supp. 2d at 924; *Walker,* 2010 U.S. Dist. LEXIS 99624 at *9. Therefore, Robinson did not have to show that venue was proper until Caterpillar challenged venue, so Robinson did not waive its ability to assert venue under 28 U.S.C. § 1391(a)(1) by failing to plead venue this way in its complaint. *Cf.* Fed. R. Civ. P. 12(h)(1) (providing that a defendant waives the defense of improper venue by failing to file the appropriate motion or responsive pleading).

Even if it is the plaintiff's burden to prove proper venue, it can do that through its allegations which are taken to be true when considering a motion to dismiss pursuant to Rule 12(b)(3). *See Stickland*, 463 F. Supp. 2d at 925; *Dental Arts Lab., Inc. v. Studio 360 the Dental Lab, LLC,* 2010 U.S. Dist. LEXIS 124029, 25-26 (N.D. Ill. Nov. 23, 2010) (unpublished); *Parker v. Hostetler*, 2008 U.S. Dist. LEXIS 8984 (N.D. Ind. Feb. 6, 2008) (unpublished). Once Caterpillar raised the issue of improper venue, Robinson pointed to allegations in its complaint showing that venue was proper under 28 U.S.C. § 1391(a)(1). Caterpillar then had the opportunity to rebut this showing by

presenting facts in affidavit form, *Stickland*, 463 F. Supp. 2d at 925, but it has not

presented any facts that show that this court does not have personal jurisdiction over it.

Thus, Robinson has shown that venue in this court is proper under

28 U.S.C. § 1391(a)(1), so this court will not dismiss this cause of action on the basis of

RULE 12(b)(3) or 28 U.S.C. § 1406(a).

      B.       *Motion to transfer*

      Pursuant to 28 U.S.C. § 1404(a), a federal district court in which a suit is filed

with proper venue may, "f]or the convenience of parties and witnesses, in the interest of

justice ... transfer any civil action to any other district or division where it might have

been brought." The court should weigh these factors of convenience and fairness on an

individualized, case-specific basis. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219

(7th Cir. 1986). It is not enough for a proponent of transfer to show that another federal

district court may be "as convenient" as the current venue; it must show that another

court is more convenient. *Id.* Transfers are disfavored when they would merely shift the

inconvenience from the defendant to the plaintiff. *Vandeveld v. Christoph*,

877 F. Supp. 1160, 1169 (N.D. Ill. 1995).

      Factors related to the convenience of the parties and witnesses, which the parties

refer to as "personal interest factors," include the plaintiff's choice of forum, availability

of and access to witnesses, each party's convenience, location of material events, and

relative ease of access to sources of proof. *Research Automation, Inc. v. Schrader-Bridgeport*

*Int'l, Inc.*, 626 F.3d 973, 978-79 (7th Cir. 2010). Factors related to the interests of justice,

which the parties refer to as "public interest factors," include docket congestion and the

likely speed to trial in each forum, each court's relative familiarity with the relevant

law, and the relationship of each community to the controversy. *Id.* at 978.

                i.      Factors related to convenience of the parties and witnesses

### 1.     Plaintiff's choice of forum

Courts within the Seventh Circuit have consistently held that a "plaintiffs' choice

of forum should rarely be disturbed unless the balance is strongly in favor of

defendant." *Gueorguiev v. Max Rave, LLC,* 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007);

*Peterson v. U. S. Steel Corp.*, 624 F. Supp. 44, 45 (N.D. Ill. 1985). This is particularly true

when, as here, the plaintiff has chosen its home forum. *Gueorguiev,* 526 F. Supp. 2d

at 857. The plaintiff's chosen forum may be given less deference if it "lacks any

significant connection with the claim." *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*,

713 F. Supp. 1125, 1129 (N.D. Ill. 1989); *Cent. States, Se. & Sw. Areas Pension Fund*

*v. Brown,* 587 F. Supp. 1067, 1070 (N.D. Ill. 1984)*; see also Kretz v. Harsco Corp.*,

No. S92-353M, 1992 WL 392633, at *3 (N.D. Ind. Sept. 22, 1992) (unpublished).

As discussed below, it appears that more of the material events in this case took

place in Illinois. Still, Indiana has a substantial connection to the suit, so Robinson's

choice of forum should be given deference. *See Masterspas, Inc. v. Master Spas of Utah*,

*Inc.*, No. 1:05-cv-362, 2006 U.S. Dist. LEXIS 62023, at *3 (N.D. Ind. Aug. 30, 2006)

(unpublished).

Caterpillar argues that this factor is a wash because both it and Robinson are plaintiffs so one plaintiff will not get its chosen forum. (Def.'s Mem. 11.) However, this argument is not persuasive. Caterpillar filed a suit for declaratory judgment in the Central District of Illinois after Robinson indicated intent to sue it in the Northern District of Indiana. The Seventh Circuit has held that the principle of the plaintiff as "master of the complaint" has less force in relation to a plaintiff who has filed an action for a declaratory judgment in order to preempt the natural plaintiff's choice of forum. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718-719 (7th Cir. 2002). Indeed the Seventh Circuit is wary of "the prospect of 'a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural plaintiff.'" *Id.* (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993)). That appears to be what Caterpillar was doing here. In fact, the court for the Central District of Illinois has already dismissed Caterpillar's motion for declaratory judgment, determining that this substantive action should be given priority. (Order of United States District Court for the Central District of Illinois 5). Thus, regardless of Caterpillar's filing of an action for declaratory judgment in the Central District of Illinois, Robinson is the plaintiff in this suit and its choice of forum will be afforded deference. Thus, this factor weighs against transfer.

### 2.     Convenience of witnesses

The factor of witness convenience is often considered the most important of the transfer factors. *See Gueorguiev,* 526 F. Supp. at 858; *Law Bulletin Publ'g Co. v. LRP Publ'ns Inc.*, 992 F. Supp. 1014, 1018 (N.D. Ill. 1998). In weighing this factor, the court should not

look at the length of witness lists produced by each side. *Id.* Rather, the court should

look to the "nature and quality of the witnesses' testimony with respect to the issues of

the case." *Id.* A court can also consider whether the witnesses could be compelled to

testify in each venue[2] and the expense and time the witnesses would forfeit to come to

each forum to testify. *Peterson,* 624 F. Supp. at 45; *Masterspas, Inc.,*

2006 U.S. Dist. LEXIS 62023, at *4. Because party witnesses "normally must appear

voluntarily," their convenience is afforded less weight than that of nonparty witnesses.

*Gueorguiev*, 526 F. Supp. 2d at 858. As Robinson points out, Caterpillar does not identify

any non-party witnesses who would be inconvenienced by venue in this court, nor does

it produce facts that support its assertion that this would be an inconvenient forum for

the key party witnesses.

In its argument that witness convenience weighs towards transfer, Caterpillar

discusses only the convenience of four key party witnesses, Robinson's employees Goff

---

[2] In its reply, Caterpillar raises the possibility that one of these four key witnesses could change jobs during the course of the litigation, becoming a non-party witnesses who resides outside of this court's subpoena power. (Def.'s Reply 7.) Because "it is assumed that employees of a party will appear voluntarily," courts consider that these witnesses do not implicate the court's subpoena power. *IP Innovation L.L.C. v. Lexmark Int'l, Inc.*, 289 F. Supp. 2d 952, 955 (N.D. Ill. 2003). Caterpillar has not presented any decisions in which courts have engaged in the type of speculation about the future employment of party employees that it suggests. It seems that courts usually consider this factor on the assumption that employment of party witnesses will continue. Additionally, this type of speculation could go on indefinitely - it is possible that the employees could not only leave their jobs, but move out of the reach of both fora entirely. So the court will not rely on speculation about future employment when considering this factor.

and Gonterman, and Caterpillar's employees Kunka and Kisby. (Def.'s Mem. 8.)

Caterpillar asserts that all four men live in Illinois locations closer to the United States

District for the Central District of Illinois in Peoria, Illinois, than to the United States

District for the Northern District of Indiana in Hammond, Indiana. (Def.'s Mem. 8;

Def.'s Reply 6.) Caterpillar has not provided any facts showing how the time or expense

that the party witnesses would need to forfeit to testify in the Northern District of

Indiana instead of the Central District of Illinois would make the former venue less

convenient. *See Masterspas, Inc.,* 2006 U.S. Dist. LEXIS 62023, at *12.

Further, Robinson correctly points out that convenience of both party and non-

party witnesses is not given much weight when the two fora at issue are in close

proximity to each other. *See Am. Sav. Bank, FSB v. Lincoln Park Sav. Bank*,

No. 2:09-cv-303, 2010 U.S. Dist. LEXIS 8475, at *14 (N.D. Ind. Feb. 1, 2010) (unpublished)

(finding that these factors were not relevant because the two potential fora, the

Northern Districts of Indiana and Illinois, were in close proximity to each other).

Indeed, transfer is not favored when the venues at issue are "separated by a short and

easily traveled distance." *Peterson*, 624 F. Supp. at 46 (refusing to transfer a case from

the Northern District of Illinois to the Northern District of Indiana because of the short

distance between the two when 28 U.S.C. § 1404(a) was intended "to eliminate the real

inconvenience which may accrue to parties and witnesses residing a substantial

distance from the district where the action is brought"); *Rupnik v. Knauf Insulation

GmbH*, 2006 U.S. Dist. LEXIS 74583, 7-8 (C.D. Ill. Oct. 12, 2006) (unpublished) (finding

that the Central District of Illinois and the Southern District of Indiana were "relatively close to each other geographically so the burden of travel [was] not significant"); *cf. Kretz*, 1992 WL 392633, at *4.

In this case, it seems that the party witnesses involved regularly travel from their residences to the Northern District of Indiana and Caterpillar has not shown that this travel presents any particular hardship to the party witnesses. 749 F. Supp. 195, 202 (S.D. Ind. 1990). Thus, the factor of convenience to these four key party witnesses does not compel transfer, though it weighs slightly towards transfer.

Additionally, Robinson has pointed to nonparty witnesses that would be needed for the case. Robinson argues that witnesses may be needed from three locations in Indiana and locations in North Carolina, Nebraska, Texas, and Wisconsin to which Robinson shipped steel at Caterpillar's direction. (Labriola Aff. ¶ 13, Pl.'s Exh. A. to Pl.'s Resp. in Opp'n. to Mot. to Dismiss 4, DE # 21-1.) Robinson argues that witnesses from other steel companies with which Caterpillar negotiated might be needed to testify to the market price for steel. (*Id.* at ¶ 14.) Caterpillar argues that even if witnesses are needed to testify to market price, the representatives from the other steel companies it negotiated with worked out of offices in Chicago, Downers Grove, and Aurora, Illinois. (Def.'s Reply 9.) Even if the witnesses would need to travel from these Illinois locations, all of them are located at least two times closer to Hammond than they are to Peoria.

Caterpillar argues that Robinson has failed to show, both legally and factually,

that any non-party witnesses would be inconvenienced by a transfer to Illinois. (Def.'s Reply 7.) However, as the proponent of transfer, it is Caterpillar who bears the burden of showing that this court is an inconvenient forum. *Summit Group Holdings, LLC v. O'Donnell*, No. 1:06-cv-339, 2007 U.S. Dist. LEXIS 38689, at *17-18 (N.D. Ind. May 25, 2007) (unpublished). Caterpillar has not shown any facts to support its argument that the witnesses' testimony that Robinson identifies would be cumulative or immaterial, that the witnesses would be unwilling to travel, or that this forum would be inconvenient for the witnesses. *Summit Group Holdings,* 2007 U.S. Dist. LEXIS 38689, at *17-18. It is possible that some of these non-party witnesses will be needed. Based on the parties' arguments, these non-party witnesses are located either in Indiana, out of either state, or in parts of Illinois that are at least two times closer to Hammond than to Peoria. Thus, the factor of convenience of non-party witnesses favors venue in the Northern District of Indiana.

### 3.    Convenience of the parties

The main considerations under this factor are "the parties' respective residences and their ability to bear the costs of litigating in a particular forum." *Event News Network, Inc. v. Thill*, 2005 U.S. Dist. LEXIS 26643, at *18 (N.D. Ill. Nov. 2, 2005). As stated above, transfer is "inappropriate if it merely shifts the balance of inconvenience between the parties." *Id.* Caterpillar has not argued that it cannot bear the cost of litigating in this forum. Courts have held that this factor is a wash when each party is advocating for venue in the district in which it resides and discovery will most likely be

conducted in both districts. *Morton Grove Pharms., Inc.,* 525 F. Supp. 2d at 1045. Such is the case here. (*See* Pl.'s Resp. 10-11.) Further, it seems that both parties travel between and conduct business in both forums. *See Paul v. Land's End, Inc.,* 742 F. Supp. 512, 514 (N.D. Ill. 1990).

Caterpillar argues that venue in the Central District of Illinois would be most convenient for both parties because both parties' key witnesses are located there. Caterpillar argues that Robinson's only convenience concern is that its headquarters are in Indiana. However, Robinson has stated that its evidentiary documents are located in Indiana, its CEO is officed in Indiana,[3] and it points to some material events that occurred in Indiana. (Labriola Aff. ¶ 2.) Also, for this factor, when a plaintiff chooses a forum, "it is normally reasonable to assume that the choice is convenient" because the plaintiff is the "master of the complaint." *Coco*, 302 F.3d at 718-19. Transfer would

---

[3] Caterpillar argues that the United States District Court for the Central District of Illinois would be a more convenient forum for Robinson's CEO, Paul J. Labriola ("Labriola"), because he lives in Illinois. (Def.'s Reply 2.) However, according to the information presented by Caterpillar, Labriola lives in Orland Park, Illinois, 29 miles and 40 minutes away from Hammond, Indiana. Labriola lives about 136 miles, an approximate two and a half hour trip to the courthouse in Peoria, Illinois. In fact, none of the courthouses within the Central District of Illinois are closer than 118 miles from Orland Park, Illinois. When considering convenience, courts can look to the actual proximity of the party to the relevant court houses, regardless of whether they are located in two different states. *Schumacher v. Principal Life Ins. Co.,* 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009) ("This Court agrees that, despite Schumacher's Michigan address, the District Court in South Bend, Indiana is closer to her home and work and is, therefore, more convenient to her."). The Hammond courthouse appears to be more convenient for Labriola. Thus, Caterpillar's attempt to help decide what is convenient for Labriola is unavailing.

simply shift the inconvenience from one party to the other. So this factor does not weigh in favor of venue in either forum.

### 4. Situs of material events

When analyzing the situs of material events, the court should focus on "the location of the actions creating the injury, not the location of the injury itself." *Event News Network, Inc.*, 2005 U.S. Dist. LEXIS 26643, at*13. Because it appears that most, if not all, of Robinson's claims arise out of the same series of events that underlie its breach of contract claim, the court will analyze the situs of events for the breach of contract. *See Valbruna Stainless, Inc. v. ADT Sec. Servs., Inc.*, No. 1:10-cv-077, 2010 U.S. Dist. LEXIS 69418, at *9 (N.D. Ind. July 12, 2010) (unpublished). For breach of contract actions, "the situs is where the business decisions causing the breach occurred." *Omnisource Corp. v. Sims Bros., Inc.*, No. 1:08-cv-89, 2008 U.S. Dist. LEXIS 53993, at *14 (N.D. Ind. July 14, 2008) (internal quotations omitted). In this case, it appears to be the contract's negotiation that is in question, not its administration. *Id.* at*15-16. Accordingly, the location of any face-to-face negotiations is important to consider. *See Worldwide Fin. LLP v. Kopko*, No. 1:03-cv-428, 2004 U.S. Dist. LEXIS 6287, at *14-15 (S.D. Ind. Mar. 18, 2004) (unpublished).

In this case, part of the parties' dispute is whether they entered into a new agreement to engage in spot pricing according to the CRU index or whether the purchase of the steel, which Caterpillar argues was not in excess of its forecast, was made pursuant to the parties' existing allotment agreement. (*See* Def.'s Mem. 5-6.)

18

Therefore, the parties refer to two different sets of events in arguing how this factor should be considered. Since the parties vehemently dispute this issue, it appears that both sets of events will be involved in the lawsuit. Accordingly, the court will look to the situs of both series of events.

Caterpillar focuses on the negotiations of the 2008 allotment contract and the purchase orders sent pursuant to that contract. (Def.'s Mem. 9-10; Def.'s Reply 3.) Robinson argues that the excess steel was not covered by the 2008 allotment contract, that the purchase orders did not include price and that for price, and that, therefore, the relevant events are the written and oral communications between the parties that lead to a new agreement for pricing for the excess steel and Caterpillar's course of dealing with third-parties. (Pl.'s Resp. 12.) Robinson points out that under Caterpillar's theory, the contract was formed in Indiana because the purchase orders were sent to and accepted in Indiana and thus the contract was formed there. (*Id.* at 12.) Caterpillar does not specifically refute this argument. However, Caterpillar's argument appears to be that because it did not exceed its amount under the allotment contract, the agreement for what Robinson calls the excess steel was entered into in Illinois during 2007 and 2008 when the 2008 allotment contract was negotiated. (Def.'s Mem. 9.)

Further, Caterpillar argues that Robinson's administration of the purchase orders is not in dispute because it is the negotiation of the contract that matters for this factor. (*Id.* at 9-10.) However, Caterpillar also argues that the purchase orders are part of the "proof central to this dispute." (*Id.* at 10.) According to Caterpillar, the purchase orders

are only important when they were sent from Caterpillar, and not when they were received and handled by Robinson.[4] It appears likely that if the purchase orders are relevant to this dispute, they are relevant because Robinson accepted and processed them in Indiana.

Caterpillar argues that even if a new agreement was reached through communications between Kunka, Kisby, Goff, and Gonterman, it was done while all four men were located in Illinois. (Def.'s Mem. 5.) Thus, it concludes, all of the communications that Robinson relies upon for its argument that a new agreement was formed took place in Illinois. (Def.'s Mem. 10.)

In response, Robinson states that the situs of material events factor is an even split between Indiana and Illinois, and that the issue of price will be mostly driven by Indiana-based evidence. (Pl.'s Resp. 12.) Robinson states that in September 2008, Kunka traveled to Robinson's East Chicago headquarters to discuss using the CRU index for

---

[4] Caterpillar argues that:

> From a documentary perspective, Caterpillar's assertion is that the totality of documents, including the purchase orders (sent from Illinois), the governing terms and conditions (maintained in Illinois), the invoices (sent to Illinois), the payments (sent from Illinois) and the written communications among the four witnesses (all internal to Illinois), all support its case. More important from a venue perspective, they all confirm that this is an Illinois-based dispute with the documentation at issue primarily maintained in Illinois that, therefore, would most conveniently be accessed if the case proceeds in Illinois.

(Def.'s Mem. 10.) It is not clear why Caterpillar appears to believe that some documents are Illinois-based when they were sent from Illinois and others are Illinois-based when they were sent to Illinois.

pricing, a discussion that Caterpillar argues involved pricing for steel to be purchased in 2009, not in 2008. (*Id.* at 2.) Caterpillar states that at this meeting in Indiana, Goff approached Kunka in the hallway to discuss CRU pricing for 2008, but that the two "did not have a meeting to discuss this issue and did not resolve the issue in our brief hallway exchange." (Kunka First Aff. ¶ 6.) Apart from this meeting, Robinson does not point to what communications formed the agreement for CRU index pricing or where these communications took place. Similarly, Caterpillar states that the discussions about CRU pricing for 2008 took place among Kunka, Kisby, Goff, Gonterman, and Labriola through e-mail exchanges, phone calls, and face-to-face meetings in Illinois, but it does not identify any specific meetings or communications. (*Id* ¶¶ 6, 7.)

The material events from which this lawsuit arises took place within both districts. The purchase orders were placed from Illinois but sent to Indiana. *See e.g. Electroplated Metal Solutions, Inc. v. Am. Servs.*, 500 F. Supp. 2d 974, 978 (N.D. Ill. 2007) (finding that the dispute occurred in both fora when the machinery at issue originated from, was loaded in, and was transported from one forum and the work order was placed there, but the bid letter and work order were received in the other forum and the delivery occurred there). Robinson's documents related to the purchase are located in Indiana, Caterpillar's are in Illinois, and the payments that were made were sent to Indiana from Illinois. *See Masterspas, Inc.,* 2006 U.S. Dist. LEXIS 62023, at *4 (finding that Indiana had significant contacts with a breach of contract case when the plaintiff's purchase orders and unpaid invoices were

in Indiana, the product at issue was manufactured in and sent from Indiana, payment was sent to Indiana, and the guaranty that the plaintiffs sought to enforce was made under and governed by Indiana law). In 2008, Robinson sent the steel that Caterpillar purchased to at least three different locations in Indiana. (Pl.'s Resp. 3.) While the parties dispute whether all of the steel supplied by Robinson to Caterpillar in 2008 was processed by Robinson in Illinois, it appears that most of it was. (Kunka First Aff. ¶ 9.) And most of it was fabricated in Illinois and sent to Caterpillar in Illinois. (*Id.* ¶ 10.) One negotiation, or negotiation attempt, appears to have taken place in Indiana, and many others appear to have taken place within Illinois. In sum, some of the material events involved in this dispute took place in Indiana, but it appears that more took place in Illinois. Accordingly, this factor weighs towards transfer.

### 5. Relative access to sources of proof

The parties dispute what evidence will be relevant in this case. Robinson argues that the relevant evidence, particularly for the non-contractual claims, includes e-mails between the parties, testimonial evidence, and "third-party documents (largely in Indiana) showing the industry price and course of dealing of Caterpillar." (Pl.'s Resp. 12.) Caterpillar argues that the relevant evidence consists of the testimony of the four key witnesses, the e-mails of the four key witnesses, the purchase orders, the invoices, and the Standard Terms and Conditions. (Def.'s Mem. 10.)

Either way, the availability of evidence factor is a wash. The parties agree that most of the pieces of documentary evidence, including the purchase orders, are

available through online systems to which both parties appear to have access. (Def.'s Exh., Kunka Second Aff. ¶ 2, DE # 2; Labriola Aff. ¶ 8.) When documents are available in either forum, they factor neutrally into the venue analysis. *See Kelley Buick of Atlanta, Inc. v. TIG Ins. Co.*, No. 1-05-cv-271, 2005 U.S. Dist. LEXIS 31733, at *7 (N.D. Ind. Nov. 29, 2005) (unpublished). Even if the relevant documents are only available in one state, "[t]he location of a party's documents and records is usually not a very persuasive reason to transfer a case." *Event News Network, Inc.*, 2005 U.S. Dist. LEXIS 26643, at *15. The parties also disagree as to whether documents held by third parties would be held in Indiana or Illinois, and at this point it is not clear. Thus the factor of location of evidence is neutral and does not weigh towards transfer.

      ii.     Factors related to the interests of justice

      **1.     Docket congestion and speed to trial**

Courts have found that this factor is neutral when the median resolution time in the two districts was only a month apart. *IP Innovation L.L.C.*, 289 F. Supp. 2d at 955. When the time for resolution in two venues is only slightly different, a transfer is more likely to delay the case than to speed the case along. *See Masterspas, Inc.*, 2006 U.S. Dist. LEXIS 62023, at *5. In this case, the time from filing to disposition of cases in 2009 was 10.2 months in the Northern District of Indiana and 9.9 months in the Central District of Illinois. Fed. Ct. Mgmt. Statistics (2009), *available at* http://www.uscourts.gov/cgi-bin/cmsd2009.pl. Further the time from filing to trial in the Northern District of Indiana was 29 months in 2008 (2009 information does not

appear to be available) and 33 months in 2008 and 31 months in 2009 in the Central District of Illinois. So one of these statistics favors the Central District of Illinois and the other favors the Northern District of Indiana. In both cases, the differences are very slight.

The Central District of Illinois has already dismissed the declaratory judgment action that Caterpillar had initiated there. Thus, at this point, transferring this case to the Central District of Illinois would easily negate any time advantage that could be gained by the slightly faster average time to disposition in Illinois. *Grant v. Homier Distrib. Co., Inc.*, No. 3:07-cv-116, 2007 U.S. LEXIS 34602, at *3 (N.D. Ind. Aug. 24, 2007) (unpublished).

### 2.    The courts' familiarity with applicable law

When a case is transferred from one federal district to another, the transfer leaves the laws unaffected. *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). Thus Indiana's choice of law rules will apply to this case. Caterpillar argues that under the procurement contract, Illinois law will apply to every aspect of the parties' dispute.[5] (Def.'s Mem 13.) On the other hand, Robinson argues that Indiana law will apply to the claims that do not arise directly from the contract. (Pl.'s Resp. 13-14.) At this point, the parties have not fully addressed the choice of law

---

[5] The Terms and Conditions governing the purchase orders state, "These Terms and Conditions and any Purchase Order shall be governed by and construed under the laws of the jurisdiction where the office of Buyer issuing the Purchase Order is located. No remedy herein provided shall be deemed exclusive of any other remedy allowed by law or equity." (Def.'s Ex. 1, DE # 11-1, 5.)

issue. When parties have not fully addressed the choice of law issue, courts can decline to speculate on how this issue will be resolved, and can find that this factor does not weigh towards or against transfer. *Vandeveld,* 877 F. Supp. at 1169.

The court notes that if Illinois law applies to this case, it would apply to claims of breach of contract, promissory estoppel, fraudulent misrepresentation, constructive fraud, and unjust enrichment. This type of law is applicable by either court as Caterpillar has not shown that the action would involve any complicated or unresolved areas of Illinois law. *See e.g., First Nat'l Bank v. El Camino Res., Ltd.,* 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006); *United Consumers Club v. Prime Time Mktg. Mgmt.,* No. 2:07-cv-358, 2008 U.S. Dist. LEXIS 2868, at *16 (N.D. Ind. Jan. 11, 2008) (unpublished) (finding that the applicability of Ohio law did not weigh towards venue in Ohio when there was nothing to indicate that the breach of contract action involved "complex or unsettled areas of Ohio law"). Further because this court is situated close to the border between Illinois and Indiana, it is familiar with this type of frequently litigated Illinois law. *Cf. Piggee v. Columbia Sussex Corp.,* 2:08-cv-107, 2009 U.S. Dist. LEXIS 14889, at *13 (N.D. Ind. Feb. 24, 2009) ("Federal courts, including this one, are often called on to interpret the laws of states other than the state in which the court is located, especially as to the law of contracts.").

If it is determined that the plaintiff can proceed under Indiana's Deception and Criminal Mischief Statutes, this court would be better situated to rule on these claims than an Illinois court. In sum, the court's familiarity with the applicable law appears to

be a neutral factor in this case if only Illinois law applies. If Indiana statutory law also applies, this factor may weigh slightly towards venue in the Northern District of Indiana.

### 3. Relationship of each community to the controversy

Both communities appear to have an interest in this case. Indiana has an interest in this case because Robinson is an Indiana corporation with its principal place of business in Indiana, and it will suffer its economic injury in Indiana. *See Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1039, 1046 (N.D. Ill. 2007) (finding that the plaintiff's status as an Illinois resident "confers Illinois with an interest in the case" and considering that the plaintiff "would suffer its economic injury in Illinois.") Robinson acted upon the contract and representations, at least in part, in Indiana. *See Paul*, 742 F. Supp. at 514. Some material events also took place in Indiana. On the other hand, Caterpillar's principal place of business is in Illinois and, regardless of whether a new agreement was reached or the allotment contract governed the steel at issue, many of the contract negotiations appear to have taken place in Illinois. Because the communities appear to have a fairly equal interest in this case, this factor is neutral.

## III. CONCLUSION

As explained at the beginning of this order, "a defendant moving to transfer an action has the burden of proving that the considerations embodied in § 1404(a) weigh heavily in favor of transfer." *Peterson,* 624 F. Supp. at 45. Caterpillar has shown that two

of the factors, situs of material events and convenience of party witnesses, weigh

towards transfer. The other factors are either neutral or, like the factor of convenience of

non-party witnesses, weigh against transfer. Accordingly, Caterpillar has not met its

burden to show that transfer is proper under 28 U.S.C. § 1404(a). *See El Camino Res., Ltd.*,

447 F. Supp. 2d at 915 (N.D. Ill. 2006) (when only the factors of situs of material events

and speed of trial weighed towards transfer and the other factors were neutral, this

showing was insufficient to support transfer); *Prokop v. StoneMor Partners. LP*,

No. 09-cv-4323. 2009 U.S. Dist. LEXIS 104734, 19-20 (N.D. Ill. Nov. 9, 2009). Caterpillar's

motion to dismiss or alternatively to transfer venue (DE # 10) is **DENIED**. The case will

remain pending before this court.

<div align="center">**SO ORDERED**.</div>

Date: March 14, 2011

<div style="margin-left: 40%">
s/James T. Moody     
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT
</div>