# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| ROBINSON STEEL CO., INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:10-CV-438-JTM-PRC |
| | ) | |
| CATERPILLAR, INC., | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Caterpillar Inc.'s Motion to Compel Plaintiff's Responses to Interrogatories and Document Requests [DE 53], filed by Defendant Caterpillar, Inc. ("Caterpillar") on April 12, 2012. Plaintiff Robinson Steel Company ("Robinson") filed a Response on May 10, 2012, and Caterpillar filed its Reply on May 17, 2012.

## BACKGROUND

In April 2011, Caterpillar served its First Set of Interrogatories and Document Requests. In June 2011, Robinson served its responses to Caterpillar's written discovery. After receiving these responses, counsel engaged in meet-and-confers in an attempt by Caterpillar to obtain complete and accurate answers to many of Caterpillar's discovery requests. In July 2011, August 2011, and March 2012, Robinson served a series of Supplemental Objections and Answers to Caterpillar's First Set

of Interrogatories and Document Requests. Nevertheless, Caterpillar maintains that Robinson's cumulative responses to Caterpillar's First Set of Interrogatories and Document Requests remain inadequate. Robinson is standing on its Third Supplemental Responses, which the Court will consider in ruling on the instant motion. Robinson notes that it has produced over 30,000 pages of

1

documents and has specifically identified documents responsive to Caterpillar's discovery requests by Bates range.

Robinson specialized in procuring, processing, and selling steel to manufacturers, and Robinson supplied steel to Caterpillar for nearly 20 years. At the end of each calendar year, an agreement was reached for the next calendar year regarding the amount of steel that Robinson committed to supply Caterpillar and the price Caterpillar agreed to pay for that steel.

Robinson provides the following version of the background to this cause of action:

> In December 2007, just as in years past, the parties reached an agreement regarding Caterpillar's 2008 steel allotment, specifically including the quantity of steel that would be supplied that year and the price for the same. The yearly allotment was then divided by twelve to set the monthly steel allocation for Caterpillar. Of course, it is necessary to conduct business in such fashion insofar as Caterpillar demanded such quantities of steel that the same could not be supplied with a day's, week's or month's notice. A great deal of planning was necessary to procure the steel Caterpillar intended to purchase for any given calendar year, with Robinson entering into corresponding agreements with Caterpillar approved steel mills and traders to secure such steel. This practice not only was utilized by Robinson and Caterpillar over the course of its relationship, it is also how the steel industry worked.
> 2008 proved to be an extraordinarily tumultuous and historically unprecedented year for the steel industry. Steel mills restricted orders as lead-times extended and prices skyrocketed, more than doubling by July 2008. Given the marketplace in 2008, Caterpillar could not procure the additional quantity and quality of steel it desired from any other vendors. Caterpillar then asked Robinson to provide steel in excess of its monthly allotment. Robinson agreed, entering the spot market and procuring the additional steel (hereinafter, "excess steel" or "excess tonnage") from certain steel service centers. Caterpillar monthly projected, ordered, received and consumed this excess steel. By the end of the year, Caterpillar had exceeded its 2008 allocation by approximately 1,575 tons.
> Robinson and Caterpillar also negotiated a price for this excess spot tonnage, which price Caterpillar knew to be higher than the 2008 fixed contract price. Indeed, in early 2008, an agreement was reached whereby Caterpillar agreed to pay for the excess tonnage based on the CRU Index, an industry recognized steel pricing index. Specifically, the price for tonnage in excess of the previously agreed-to allotment was to be calculated by multiplying the tons in excess of Caterpillar's allotment for any given month by the accumulated change, up or down, in the CRU Index price. This figure was then added to the fixed contractual price. An index pricing model

> was chosen because neither Caterpillar nor Robinson knew the future spot price, and Caterpillar could not determine the actual amount of steel it needed shipped from month to month. Despite their agreement, and despite the fact that each month, Robinson informed Caterpillar of the actual amount of steel by which it exceeded its monthly allotment, Caterpillar repeatedly delayed payment for the excess steel to Robinson. *See* excerpt of Spreadsheet detailing overages, attached hereto as Exhibit A. In the end, Robinson learned why: Caterpillar never intended to pay for the excess steel it ordered.

Pl. Resp., p. 2-3 (footnote omitted).

In contrast, Caterpillar represents that, in 2008, it ordered steel from Robinson by issuing purchase orders reflecting the amounts of steel being ordered and the agreed upon price. After shipment, Robinson invoiced Caterpillar for the steel. Caterpillar paid Robinson for all of the steel purchased in 2008 based on the amounts reflected in Caterpillar's purchase orders and Robinson's invoices. However, Caterpillar asserts that Robinson now claims that it is owed approximately $875,000 in addition to the approximately $16,000,000 that Caterpillar paid Robinson in 2008.

Caterpillar represents that, in late 2007, Caterpillar provided Robinson with an estimate of 24,204 tons of steel that it planned to order from Robinson in 2008. Robinson, in turn, contracted with its supplier to ensure that it had enough raw steel on hand to meet Caterpillar's needs. Caterpillar argues that Robinson now alleges that Caterpillar's tonnage estimate is a binding contract between Caterpillar and Robinson and that Robinson further alleges that it and Caterpillar agreed that Caterpillar would pay a spot market index, CRU, for any tons Caterpillar ordered over its estimate to cover Robinson's alleged additional costs in obtaining this additional steel on the open market. Caterpillar interprets Robinson's central claim to be that Caterpillar purchased 1,575 tons more than its 24,204-ton estimate and failed to pay the difference between the contract price and the CRU price for this excess steel. Robinson asserts claims of breach of contract, promissory estoppel, fraudulent misrepresentation, constructive fraud, unjust enrichment, and violation of Indiana's

3

deception and criminal mischief statutes.

Caterpillar has identified three key factual issues at the core of Robinson's lawsuit that Caterpillar disputes: (1) Robinson is not bound by the price terms set forth in the purchase orders and invoices; (2) Caterpillar ordered 1,575 tons over its 2008 estimate; and (3) Caterpillar agreed to pay CRU pricing for any tons it ordered over its estimate. Caterpillar asserts that the disputed discovery at issue in the instant motion is relevant to these factual disputes.

**ANALYSIS**

In its motion, Caterpillar argues that Robinson has refused to provide discovery relating to the following subjects: the terms of Caterpillar's alleged agreement with Robinson to purchase 24,204 tons of steel in 2008; the terms of Caterpillar's alleged agreement to pay CRU pricing for tons purchased in excess of this amount; the total tons of steel Caterpillar actually purchased in 2008; and Robinson's alleged losses arising from its claim that it had to obtain steel in excess of the 24,204 tons at spot market prices. Caterpillar further argues that Robinson has refused to provide Caterpillar with discovery regarding its allegations of fraudulent and illegal conduct.

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Furthermore, it provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). A party may seek an order to compel discovery when an opposing party fails to respond to discovery

4

requests or provides evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a). A party objecting to the discovery request bears the burden of showing why the request is improper. *See McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The Court has broad discretion when deciding whether to compel discovery. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)).

The Court considers each disputed Interrogatory and Document Request in turn.

*1.  Interrogatory No. 3*

Interrogatory No. 3 provides: "Identify each communication between Robinson and Caterpillar where a price for the 1,575 tons of steel that are the subject matter of the complaint are discussed." Def. Br., Exh. B., p. 3. The term "identify" requires Robinson to state the date, place, type, substance, and persons who made and received the communication.

Robinson objected "to the extent it seeks information already within Caterpillar's knowledge, possession, and/or control." Subject to that objection, Robinson further responded:

> Pursuant to Fed. R. Civ. P. 33(d), responsive, non-privileged documents have been produced and identified with Bates-labels on the attached Exhibit A. Answering further, from February 2008 through January 2009, numerous communications occurred between Caterpillar and Robinson regarding the pricing for the excess tonnage requested by Caterpillar in 2008. As for the written communications, see above. As for the oral communications, those occurred by phone and at in-person meetings, typically between Neil Kisby, Richard Osbourne and Dennis Kunka, on the one hand, and Henry Goff and Trevor Gonterman, on the other. Answering further, with respect to many of the oral communications, the same were contemporaneously summarized and documented electronically. These memorialized communications were previously provided and are specifically identified as responsive to this Interrogatory in Exhibit A.
> Investigation continues.

Def. Br., Exh. B, p. 11.

In the motion, Caterpillar acknowledges that Robinson identified the written communications and those "oral communications . . . [that] were contemporaneously summarized and documented electronically[.]" Caterpillar argues that Robinson's remaining response as to the non-documented oral communications is inappropriately vague. Robinson responds that it has appropriately identified the persons who engaged in those conversations and the method by which those communications took place. In support, Robinson refers to its answer to Interrogatory No. 2, which asks Robinson to list all persons with knowledge or information relating to the allegations of the Complaint and to provide a description of the substance of each identified person's knowledge. Indeed, in its answer to Interrogatory No. 2, Robinson provides a thorough and useful description of each person's knowledge. Robinson argues that it is unreasonable, if not impossible, for Robinson to specifically enumerate the "date, place, type, substance and persons who made and received" or engaged in every undocumented, oral communication because Robinson and Caterpillar communicated frequently, sometimes daily, over their course of their twenty-year relationship, including in 2008. Robinson suggests that Caterpillar can make this same inquiry of its own employees or make an inquiry of the listed individuals during depositions. Caterpillar replies that, Robinson is asserting for the first time in its opposition brief that it cannot identify these oral communications that have not been memorialized. Caterpillar represents that there are two employees that Robinson has identified as having this information.

Having considered the parties' arguments, the Court grants the Motion to Compel as to Interrogatory No. 3 as to the employees that have been identified as having participated in the relevant discussions as well as any other individuals who may be identified as having participated in the relevant discussions. The Court orders Robinson to ask the employees to provide information

6

for any communication of which there is no business record and to supplement its written response by specifically identifying each oral communication regarding the same, including as best as possible the date, place, type, substance, and persons who made and received the communication. If the individuals are unable to provide the requested information, then the written response shall state that fact.

2. *Interrogatory No. 4*

This Interrogatory provides: "Do you contend that Robinson and Caterpillar entered into an oral contract wherein Caterpillar agreed to pay CRU pricing for steel? If yes, identify all communications relating to and documents supporting your contention." Def. Br., Exh. B., p. 11. Robinson's response sets out an explanation, similar to the background provided above, regarding the negotiations that began at the end of 2007 and the parties' interactions in light of the steel industry in 2008. Caterpillar argues that this is a contention interrogatory and that Robinson has refused to answer it with a simple "yes" or "no." Caterpillar argues that it is entitled to know whether Robinson is proceeding on an oral contract theory, or whether its breach of contract claim is based on an alleged written agreement, or both. Caterpillar further argues that, if Robinson is proceeding on an oral contract theory, Caterpillar is entitled to know the factual basis for its assertion that an oral contract was reached.

Robinson responds that its answer is directly responsive because it has stated that there was an agreement between Caterpillar and Robinson, whereby Caterpillar agreed to pay CRU pricing for the tonnage exceeding the previously agreed upon monthly allotment. Robinson argues that the discovery in this case will direct the legal conclusion, at which time Robinson will supplement its answer to this interrogatory.

Caterpillar replies that none of the documents disclosed in discovery reveals the formation of an oral contract. Caterpillar has posed this interrogatory because the Verified Complaint is vague as to whether the breach of contract claim was based on a written or oral contract. Caterpillar argues that Robinson is avoiding its obligation to put Caterpillar on notice of its legal claims.

If Robinson is asserting that an oral contract was formed, at least one Robinson employee must have been there to witness the formation of the oral contract. Based on the answer to Interrogatory No. 3, it appears that there are at least two employees who would know the answer to this question; thus, there is no undue burden on Robinson to gather this information. Robinson has not identified what other specific discovery it might require to enable it to answer this interrogatory.

Therefore, the Court grants the Motion to Compel as to Interrogatory No. 4 and orders Robinson to (a) provide a "yes" or "no" answer to the question of whether Robinson contends that Caterpillar entered into an oral contract for CRU Pricing, and, if yes, (b) for any communication of which there is no business record, supplement its written response by specifically identifying each oral communication regarding the same, including as best as possible the date, place, type, substance, and persons who made and received the communication.

3.  *Interrogatory No. 6*

Interrogatory No. 6 provides: "Identify any documents supporting and all factual bases for your allegation in paragraph 10 of your complaint that '[f]or the full year 2008, Caterpillar ordered at least 1,575 tons of steel beyond its yearly allotment under the parties' supply agreements.'" Def. R., Exh. B, p. 12. Robinson answered:

> Robinson objects to this interrogatory to the extent it seeks information protected by the work product and/or attorney-client privilege or already within Caterpillar's knowledge, possession, and/or control. Subject to and without waiving these objections or the general objections set forth above, pursuant to Fed. R. Civ. P. 33(d),

8

> responsive, non-privileged documents have been produced and identified with Bates-labels on the attached Exhibit A. Answering further, from February 2008 through January 2010, numerous communications occurred between Caterpillar and Robinson regarding the excess tonnage requested by Caterpillar in 2008, which steel Robinson supplied. As for written communications, see above. As for oral communications, those occurred by phone and in person between Neil Kisby, Richard Osbourne and Dennis Kunka, on the one hand, and Henry Goff and Trevor Gonterman, on the other.
> Investigation continues.

*Id.* at p. 13.

One of the key factual issues in this case is the amount of steel Caterpillar purchased from Robinson in 2008. Caterpillar represents that its records show that it ordered from Robinson and paid for approximately 25,217 tons in 2008, which would be an "excess" of 1,013 tons from what Caterpillar contends were estimated projections. Robinson argues that it has identified for Caterpillar data as well as other documents detailing Caterpillar's monthly steel orders. Caterpillar argues that the interrogatory asks Robinson to "explain the basis for its claim that Caterpillar ordered '1,575 tons of steel beyond its yearly allotment.'" However, the interrogatory does not ask for an explanation or calculation; it asks only for the identification of documents and the factual basis for the allegation. The Court finds that Robinson has done so, and Caterpillar has not argued otherwise. Accordingly, the Court denies the Motion to Compel as to Interrogatory No. 6.

4.  *Interrogatory No. 7*

Interrogatory No. 7 provides: "Of the total tons of steel purchased by Caterpillar from Robinson, identify the 1,575 tons of steel that are the subject matter of the complaint by heat number, purchase order number, and invoice number." Def. Br., Exh. B., p. 13. Robinson answered:

> Robinson objects to this interrogatory to the extent it seeks information already within Caterpillar's knowledge, possession, and/or control. Subject to and without

9

> waiving this objection or the general objections set forth above, pursuant to Fed. R. Civ. P. 33(d), responsive, non-privileged documents were previously produced, specifically the EDI data identifying the steel Caterpillar ordered and Robinson delivered each month throughout 2008. The tonnage that exceeded Caterpillar's 2008 monthly allotment of 2,017 tons represents the excess tonnage. Investigation continues.

*Id*.

Caterpillar argues that it requires the specific information requested in the interrogatory to allow both parties to identify the specific excess tons at issue and determine the costs Robinson incurred for procuring this excess steel. Caterpillar contends that the 21,000 pages of "EDI data" likely does not contain the requested material and that Robinson has not specified *which* pages of the "EDI data" are responsive as required by Rule 33(d). Caterpillar also reasons that "[i]f Robinson was forced, as it maintains, to purchase 1,575 excess tons on the spot market at CRU prices, it surely must know which excess tons were purchased at this rate." Def. Br., p.8. Caterpillar contends that, because it is not in a position to identify those tons–that only Robinson can, the burden to identify the information is not "substantially the same for either party" under Rule 33(d).

Robinson responds that Caterpillar is asking Robinson to invent information that "simply does not exist." Pl. Resp., p. 8. Robinson explains that the steel industry does not work the way Caterpillar imagines or tries to convey in its motion. This is because Caterpillar purchased its steel by piece, not by ton. Therefore, in any given month, Caterpillar ordered a certain number of parts, and the parts were shipped to various locations at Caterpillar's request. For example, Robinson points out that, in January 2008, Robinson's records (which have been produced to Caterpillar) reflect that Caterpillar ordered 2,468 tons of steel. Those 2,468 tons of steel were comprised of 850 shipments of 12,907 parts to a number of Caterpillar facilities, weighing a total of 4,935,790.00 pounds. Therefore, Robinson argues that it is not possible to extract from this data information

10

identifying ton number 2018 of 2468 by heat number, purchase order number, and invoice number. Robinson also argues that it does not matter which of the 12,907 parts shipped in January 2008 constituted "excess tonnage" and that it only matters that excess tonnage in January 2008 was ordered and received and that Caterpillar agreed to pay the difference between the original contract price and the CRU index price for any steel ordered in excess of its monthly allotment.

Robinson also states that it cannot trace the steel purchased on the spot market to satisfy Caterpillar's steel consumption in 2008 in the manner requested by Caterpillar. This is because Robinson was required to order spot market tons to fulfill its orders (whether they were orders of Caterpillar or other customers) because Caterpillar ordered steel in excess of its monthly allotment. Therefore, Robinson's position is that, even if the steel purchased on the spot market went to a customer *other* than Caterpillar, because the purchase on the spot market was necessitated by Caterpillar's excess orders, Caterpillar is required to pay the difference.

As for the accessibility of the EDI information, Robinson explains that this data is the information sent back and forth between Caterpillar's and Robinson's computers. Robinson acknowledges that the EDI information cannot be produced in a printable format, but argues that Caterpillar can access the same information in its own system. Also, Robinson has provided Caterpillar with a link to the native EDI data within Robinson's production, which Caterpillar should be able to view with the correct software.

Caterpillar replies that this is the first time that Robinson has suggested that the information sought "simply does not exist" because "the steel industry does not work the way Caterpillar imagines or tries to convey in its motion." Def. Reply, p. 6. Caterpillar argues that this new position "squarely conflicts with the sworn allegations made throughout its Verified Complaint." *Id*.

11

Specifically, the Verified Complaint alleges that "Robinson provided all of these tons of steel to Caterpillar, and Caterpillar accepted all such tons of excess steel," that "Robinson was significantly damaged by procuring the excess steel and supplying it to Caterpillar at a significant monetary loss;" and that "Robinson went out to the marketplace during the steel squeeze of 2008, and purchased at least 1,575 tons of excess steel and supplied it to Caterpillar." Verified Compl., ¶¶ 14-15, 38, 70. Similarly, in the state law claims for promissory estoppel, fraudulent misrepresentation, constructive fraud, and violation of Indiana's deception and criminal mischief statutes is the sworn allegation: "In reliance upon Caterpillar's representations of material fact, Robinson procured the excess steel from the marketplace and provided it to Caterpillar." *Id*. at ¶¶ 31, 41, 49, 56, 64. Caterpillar argues that there is nothing in the Verified Complaint to suggest that Robinson reallocated steel intended for another customer to Caterpillar and then procured additional steel on the spot market to fill the other customer's existing orders.

Therefore, Caterpillar argues that, based on the allegations of the Verified Complaint, Caterpillar is entitled to know how much steel Robinson procured on the spot market to fill Caterpillar's orders allegedly in excess of its alleged allotment, how much Robinson paid for that steel, and details sufficient for Caterpillar to identify that alleged steel. The Court agrees and grants the Motion to Compel as to Interrogatory No. 7, ordering Robinson to supplement its answer accordingly. If no such information exists because the excess steel purchased on the spot market was not used to fill Caterpillar's orders, then the answer shall state that information.

5.  *Interrogatories No. 8 & 9*

Interrogatory No. 8 provides: "Identify any documents supporting and all factual bases for your allegation in paragraph 14 of your complaint that 'Kunka and Kisby agreed to pay for the

excess steel at CRU pricing.'" Def. Br., Exh. B, p. 13. Interrogatory No. 9 provides: "Identify any documents supporting and all factual bases for your allegation in paragraph 16 of your complaint that Caterpillar 'has repeatedly acknowledged that it owed additional amounts for the at least 1,575 tons of excess steel.'" *Id*. at p. 14. In response, Robinson points to the Bates-labeled documents produced pursuant to Rule 33(d), identifies the individuals involved in any oral communications, and uses essentially the same boilerplate language used in response to Interrogatories Nos. 3 and 6: "from February 2008 through January 2010, numerous communications occurred between Caterpillar and Robinson regarding the excess tonnage requested by Caterpillar in 2008." *Id*., pp. 13-14.

Caterpillar argues that any evidence that tends to support or negate the alleged agreement to pay CRU pricing is central to this dispute as is any evidence that tends to confirm or deny Caterpillar's recognition of this alleged debt. Because Robinson has alleged that these agreements were reached, Robinson should be able to identify with particularity any undocumented oral agreements to that effect. For the same reasons given in ruling on the Motion to Compel as to Interrogatory No. 3, the Court grants the Motion to Compel as to Interrogatories No. 8 and 9.

6. *Interrogatories No. 10 & 11*

Interrogatory No. 10 provides: "Identify any documents supporting and all factual bases for your allegation in paragraph 16 of your complaint that 'Caterpillar engaged in a series of additional and fraudulent acts including: (1) offering potential future business to Robinson if Robinson would forgo payment of the excess steel at the CRU pricing; and (2) requesting that Robinson add the amounts it was owed for the excess steel from 2008 into the pricing for 2009 steel being supplied Caterpillar.'" Def. Br., Exh. B., p. 14-15. In response, Robinson provided:

13

> Robinson objects to this interrogatory to the extent it seeks information protected by the work product and/or attorney-client privilege or already within Caterpillar's knowledge, possession, and/or control. Subject to and without waiving these objections or the general objections set forth above, pursuant to Fed. R. Civ. P. 33(d), responsive, non-privileged documents have been produced and identified with Bates-labels on the attached Exhibit A. Answering further, from 2008 through early 2010, Caterpillar informed Robinson that the difference between the 2008 contract price and the CRU pricing Caterpillar agreed to pay in connection with the excess tonnage would be satisfied with future business to Robinson if Robinson agreed to forego immediate payment. Caterpillar also informed Robinson that the difference between the 2008 contract price and CRU pricing for Caterpillar's excess tonnage could be built into pricing for the 2009 steel Robinson was going to supply Caterpillar. Finally, Caterpillar promised multiple millions of dollars in the "Burn to Shape" parts procurement business as a way to make up the money Caterpillar failed to pay Robinson for the 2008 excess steel. These representations turned out to be false. As for written communications, see above. As for oral communications, those occurred by phone and in person between Neil Kisby, Richard Osbourne and Dennis Kunka, on the one hand, and Henry Goff, Trevor Gonterman and Paul Labriola, on the other. Investigation continues.

Def. Br., Exh. B., p. 15.

Interrogatory No. 11 provides: "Identify all statements made by Caterpillar that Robinson contends were misrepresentations, false, misleading, deceptive, or without basis in fact." *Id*. at p. 15. Robinson responded:

> Pursuant to Fed. R. Civ. P. 33(d), responsive, non-privileged documents have been produced and identified with Bates-labels on the attached Exhibit A. Answering further, Caterpillar falsely represented that it had an agreement with Robinson to pay for steel beyond its 2008 allotment at CRU pricing and that CRU pricing was reasonable. Robinson reasonably relied on Caterpillar's misrepresentations, purchasing excess steel from the marketplace and, in turn, selling it to Caterpillar as it requested. Unbeknownst to Robinson, in the moments it made these representations, Caterpillar knew that it had no intention of paying CRU pricing for the excess tonnage procured by Robinson. As for written communications, see above. As for oral communications, those occurred by phone and in person between Neil Kisby, Richard Osbourne, Dennis Kunka and David Berner, on the one hand, and Henry Goff, Trevor Gonterman and Paul Labriola, on the other. Investigation continues.

*Id*. at pp. 15-16.

Caterpillar argues that, in light of Robinson's numerous claims that contain some element of fraudulent or deceptive conduct, Caterpillar is entitled to know what specific acts or statements Robinson believes give rise to such claims. Caterpillar acknowledges that Robinson has generally described the conduct by Caterpillar in this answer, but Caterpillar seeks specific details about the allegedly fraudulent or misleading statements or acts that set forth the basic who, what, where, when, of the fraudulent misrepresentation claim. It appears that Robinson has provided the requested documents. However as to the request for providing factual bases in Interrogatory No. 10 and the request for statements in Interrogatory No. 11, the Court agrees with Caterpillar and grants the Motion to Compel in this respect as to Interrogatories Nos. 10 and 11. The Court orders Robinson to supplement its written response by providing all factual bases that support these allegations, including, for any oral communication, the date, place, type, substance, and persons who made and received the communication.

7.   *Interrogatory No. 13*

Interrogatory No. 13 provides: "For each category of damages you claim, identify the category, the total amount sought and the basis upon which each such amount was determined, including identification of all documents and other information used to determine your claimed damages amount." Def. Br., Exh. B., p. 16.

The Court has reviewed Robinson's answer and finds that, given the wording of this Interrogatory, Robinson's answer is satisfactory. The information that Caterpillar now asserts that it seeks in its Motion to Compel is not specifically requested in Interrogatory No. 13. However, it appears to the Court that some of the same information has been ordered to be produced in response to other Interrogatories. As for Caterpillar's argument in its reply brief that it is entitled to know

15

"each theory under which recovery is sought" for punitive damages and attorney fees, Interrogatory No. 13 does not ask for that information. Accordingly, the Court denies the Motion to Compel as to Interrogatory No. 13.

8.  *Document Request No. 6*

Document Request No. 6 requests "[a] copy of the alleged steel supply agreements for 2004, 2005, 2006, 2007, 2008, and 2009." Def. Br., Exh. E., p. 4. In response, Robinson wrote:

> Robinson objects to this document request to the extent it is overly broad, not reasonably calculated to lead to the discovery of admissible evidence and to the extent it seeks information already within Caterpillar's knowledge, possession and/or control. Subject to and without waiving these objections or the general objections set forth above:
> Robinson will produce non-privileged documents responsive to this request.

Def. Br., Exh. F., p. 4.

In the motion, Caterpillar asserts that, despite Robinson's written response to the Document Request, Robinson did not produce any copies of the parties' alleged steel supply agreements for the identified years. In its response brief to the instant motion, Robinson states that it will provide the documents within 10 days. Caterpillar's reply brief, which was filed seven days after Robinson's response, does not indicate that Robinson had provided those documents as of that date. Given that Robinson does not contest that these documents will be produced, the Court grants the Motion to Compel as to Document Request No. 6 and orders Robinson, if it has not already done so, to produce the responsive documents to Caterpillar.

9.  *Document Request No. 8*

Document Request No. 8 asks for

> [a]ll documents relating to all of the steel Robinson procured for Caterpillar in 2008, including, without limitation, for each shipment to Caterpillar, documents reflecting from whom Robinson procured the steel, each separate quantity procured, how much

16

> Robinson paid, the date Robinson procured the steel, the location where Robinson procured the steel, the location where Robinson processed the steel, the location where Robinson delivered the steel and how much Caterpillar paid.

Def. Br., Exh. E., p. 4. Robinson responded:

> Robinson objects to this document request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and to the extent it seeks production of information protected by the work product and/or attorney-client privilege or information already within Caterpillar's knowledge, possession and/or control. Subject to and without waiving these objections or the general objections set forth above:
> Robinson will produce non-privileged documents reflecting steel ordered and received by Caterpillar from Robinson in 2008.

Def. Br., Exh. F., p. 5.

Caterpillar argues that all the information sought in this Document Request is necessary to evaluate Robinson's claim that it suffered damages as a result of purchasing steel at spot market prices to meet Caterpillar's needs. Caterpillar represents that Robinson has consistently refused to provide documents showing cost data or the other sourcing information called for by this request.

In response, Robinson reasserts its objections, but notes that it did agree to produce non-privileged documents reflecting steel ordered and received by Caterpillar in 2008 and has done so. For example, Robinson represents that it produced documents reflecting the steel parts ordered by Caterpillar in 2008 and the delivery location of those parts. Robinson asserts that the remainder of the information requested, with the exception of the information regarding how much Caterpillar paid for the steel it ordered from Robinson (information Robinson asserts is already in Caterpillar's possession), has no bearing on this litigation.

The Court disagrees. The Court finds that each category of document sought in Document Request No. 8 directly bears on the calculation of damages alleged by Robinson. Accordingly, the Court grants the Motion to Compel as to Document Request No. 8 and orders Robinson to procure

documents showing, for all of the steel Robinson procured for Caterpillar in 2008, from whom Robinson procured the steel, each separate quantity procured, how much Robinson paid, the date Robinson procured the steel, the location where Robinson procured the steel, the location where Robinson processed the steel, the location where Robinson delivered the steel and how much Caterpillar paid.

*10.    Robinson's objections to document requests*

In the last section of the motion, Caterpillar represents that it has repeatedly asked Robinson to clarify which of its objections it was "standing on" to withhold responsive documents and/or information. Caterpillar represents that Robinson informed Caterpillar in July 2011 that it would provide this information as part of its second supplemental discovery responses but did not do so. Caterpillar argues that it needs this information in order to evaluate which of Robinson's objections should be challenged. Robinson responds that Caterpillar's contention that it is unaware of which objections Robinson is "standing on" is "disingenuous," citing August 2, 2011 correspondence from T. Williams, and March 21, 2012 correspondence from P. Cooke. It appears from the Court's review of this correspondence that Robinson has not indicated whether it is withholding documents and information on the basis of its written objections to Caterpillar's document requests. Accordingly, the Court grants the Motion to Compel on this issue and orders Robinson to identify which, if any, of its objections it is "standing on" to withhold documents and/or information responsive to Caterpillar's discovery requests and, if Robinson has withheld material on the basis of its objections, specifically identify what document and/or information is being withheld. If no documents or information are being withheld, Robinson shall state that in its response.

**CONCLUSION**

For the foregoing reasons, the Court here by **GRANTS in part and DENIES in part** Defendant Caterpillar Inc.'s Motion to Compel Plaintiff's Responses to Interrogatories and Document Requests [DE 53]. The Court **ORDERS** Robinson to respond to the outstanding discovery on or before **September 5, 2012**.

SO ORDERED this 6th day of August, 2012.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc: All counsel of record